### John McKechney et al., Plaintiffs in Error, v. City of Chicago, Defendant in Error.

### Three Cases Consolidated for Hearing.

### Gen. No. 15,360.

1. CONTRACTS—*when do not bind municipal corporation.* Held, that the document in question in this case was for various reasons specified in the opinion not a contract so entered into and executed as to be binding upon the municipality sought to be charged thereby.

2. CONTRACTS—*by whom question of validity determined.* It is for the court to pass upon and determine the validity and binding effect of a contract.

3. INSTRUCTIONS—*when giving of erroneous, will not reverse.* If it appears that substantial justice has been done the giving of erroneous instructions will not reverse.

4. EVIDENCE—*self-serving declarations incompetent.* A letter written by plaintiff to the mayor of a city setting up the claim of plaintiff against said city if self-serving in character is incompetent even though incorporated in the declaration filed on behalf of said plaintiff.

5. TRIAL—*when conduct of juror will not reverse.* A personal test by a juror of a sample of material submitted to the jury for their inspection and examination, *held,* not ground for reversal.

Error to the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed April 7, 1911. Rehearing denied April 18, 1911. *Certiorari* denied by Supreme Court (making opinion final).

PARK PHIPPS, LAURENCE MAXWELL, JR., CHARLES H. ALDRICH and PLINY B. SMITH, for plaintiffs in error.

EDWARD J. BRUNDAGE and ROBERT N. HOLT, for defendant in error.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

This writ of error brings before this court for review a judgment of the Circuit Court of Cook county in favor of the defendant in error in the above mentioned cases, which were consolidated in the Circuit Court and tried together. Suits were brought by the plaintiffs in error to recover in the aggregate sums approximating one million dollars under certain contracts for the construction of what is known as the Northwest Land Tunnel, in the city of Chicago, for labor performed and material furnished, not included in the contract under which the work was done, and for the value of construction plants seized by the city and never returned to the plaintiffs in error. The defendant pleaded the general issue and filed pleas of set-off, claiming over five hundred thousand dollars for alleged unlawful payments made by the city to plaintiffs below, and for a penalty or liquidated damages of two hundred dollars per day for delay in completing the tunnel and for other things. The trial below resulted in a verdict in favor of the defendant for one dollar on its plea of set-off.

In plaintiffs in error's brief it is said:

"As the question of the verdict being against the

evidence is not being argued, the abstract has not been made as full as it would have been were it intended to argue that point, but it is sufficiently full to show the errors relied on.

"The errors relied on by plaintiffs are errors in instructions, errors in rulings upon the admission of evidence, and misconduct of a juror."

This litigation is not unfamiliar to the courts of this county and the Supreme Court. The litigation in one form or another has been before the Supreme Court of this state on two different occasions, namely, in the case of City of Chicago v. Weir et al., 165 Ill. 582, and City of Chicago v. McKechney et al., 205 Ill. 372. In the latter case appears a statement of the pleadings under which the trial before us was had, and also a statement of the substantial and controlling facts involved in the proceedings at bar, so far as those facts had developed at the time of the trial then under review, and it would serve no useful purpose to restate them here.

Although the plaintiffs in error have not furnished the court with a full abstract of the record in this case, which occupies about 7,500 pages, the defendant in error has filed a supplemental or additional abstract which brings before us some of the additional facts shown by the record, bearing upon the general merits of the controversy. The evidence abstracted in the additional abstract of record, as well as that contained in the original abstract of record, and to some extent the record itself has been duly considered by us, in passing upon the instructions which it is claimed by the plaintiff in error are erroneous, and upon the errors claimed to exist in the instructions the plaintiffs in error chiefly rely to secure a reversal of the judgment below.

Although the authority of the opinion in City of Chicago v. McKechney, *supra,* has been questioned in argument, we regard the decision of the Supreme Court as determining the controlling and decisive questions raised before us.

It is contended that instruction number 5 was misleading in that it gave the jury to understand that the Commissioner of Public Works could not make the contract of May 17, 1897, and it could not be ratified by the city. That instruction reads as follows:

"5. The Court instructs you that in the said contract of October 19, 1895, it is provided that the plaintiffs shall perform all of said work under the immediate direction and superintendence of the Commissioner of Public Works of said City; but the Court instructs you that under such provision no power is therein given to the Commissioner to consent or direct that the work under said contract should be done contrary to its terms, for the only power which the said Commissioner possessed in this respect under said contract was to enforce its execution according to its terms, and to direct only such incidental changes as might be necessary in the prosecution of the work, and which tended' rather to the complete fulfillment of its terms than to their substantial violation, and the jury will so consider the extent of such powers in arriving at your verdict."

Plaintiffs in error contend that the above instruction is both misleading and positively erroneous. It is urged that the jury might well understand from this instruction that the Commissioner of Public Works had no power to make the alleged agreement of May 17, and having no such power, that it was void and could not be ratified by the city. We think the jury might so understand the instruction, and if they did so understand it, the instruction fulfilled its purpose, in stating correctly the law with reference to the alleged contract of May 17, 1897. In our opinion what is called in this case and in argument the contract of May 17, 1897, was not a contract at all. Upon the proof in the record it was never signed by any officer of the city, and it was never ratified by the city, and it was never intended by the city to express a definite contract with reference to the subject-matter of the writing called the contract of May 17, 1897. We think this so-called contract was declared not to be a con-

tract in the opinion of the court in City of Chicago v. McKechney, *supra,* at pages 432 to 452, inclusive of the opinion. Further than that, and as stated in that opinion, the statute specifically provides the method for making municipal contracts involving an expenditure of more than five hundred dollars. The city ordinance also covered the same subject. The power to make contracts without advertising for bids, and without a vote of two-thirds of all the aldermen was not conferred upon the Commissioner of Public Works when the alleged contract of May 17, 1897, was signed by Weir, McKechney & Co. and presented to the Commissioner of Public Works. It is admitted that it was never executed by any city official, and any remarks made by the Commissioner of Public Works could in no wise constitute an acquiescence in or ratification or execution of the paper on the part of that official. It purported to be a special contract that could only be made in the special manner provided by the statute, and no inference could be drawn in favor of its execution from any acts done by any officials of the city with reference to it, shown by the record. The mere fact that the paper was put in the book of contracts kept in the office of the Commissioner of Public Works would have no significance under the law.

The legal effect of the action of the city council with reference to this alleged contract is fully discussed in the opinion last referred to at page 436. The recital in the contract of October 8, 1898, of the alleged contract of May 17, 1897, has no possible bearing upon its validity as a contract, and could not have in law. Further, the context of the alleged contract of October 8, 1898, shows very clearly that whatever arrangement was contemplated was to be without prejudice to the questions at issue between the parties, all of which questions were left to the decision of the court. Instead of being a ratification of the alleged contract of May 17, 1897, it was apparently agreed, so far as it was possible to make an agreement, in the contract of

October 8, 1898, that the making and the ratification of the May 17 paper and the validity of that paper as a contract was left for the future determination of the courts.

The facts in connection with the making of this alleged contract of May 17, 1897, are not in dispute. There is no controversy as to the material facts connected therewith. The question as to whether it was a valid contract was therefore a question of law for the court to decide. There was nothing in connection with the making of that alleged contract to be left to the jury. The court therefore had a right to pass upon the validity of that contract in the manner in which it did, inferentially, in the instruction under consideration. And if no such contract was made as a matter of law, then the rights of the parties were to be determined by the contract of October 19, 1895, and the provisions of that contract were not enlarged or modified in any way by the alleged contract of May 17, 1897.

Errors are assigned upon the action of the trial court in giving other instructions at the request of the defendant in error. The instructions are conceded to be erroneous by counsel for defendant in error. The giving of them cannot be justified in our opinion. Substantial justice has been administered in the case in so far as plaintiffs in error were denied any right of recovery against the city.

In passing upon the instructions and errors therein and whether the judgment should be reversed because of such errors, we are influenced by the great preponderance of the evidence in the case, as it appears to us, in favor of the defendant in error.

The evidence would have warranted the jury, in our opinion, in returning a large verdict in favor of the defendant, city. From an examination of the record no verdict in favor of the plaintiffs could ever be maintained, we think, upon the evidence, when considered with reference to the law of this case as laid down by the Supreme Court.

In City of Chicago v. McKechney, *supra*, at page 452 of the opinion, the court says:

"Appellees claim that the changes in the plans and specifications, made by the Commissioner of Public Works lead up to an excavation which was partly in earth and partly in rock. Therefore, the additional work required thereby should have been done by the contractors at the prices for like work as stipulated in the contract. What is the price for like work as stipulated in the contract? The contract of October 19, 1895, provides, among other things, as follows: 'Rock excavation over and above cost of lineal foot of tunnel or shaft $2.00 per cubic yard.' The 'rock excavation' applies to all rock tunnel and includes tunnel in mixed earth and rock. Indeed the contract of May 17, 1897, refers to 'all material encountered in earth tunnel that is rock or of such nature that it is classified as rock.' If it was rock or of such a nature as to be classified as rock it would come within the provision which provides for $2.00 per cubic yard for rock excavation, except that such additional price of $2.00 per cubic yard for rock excavation is over and above the unit price per lineal foot of tunnel in rock. It would seem to follow, therefore, that the contract of October 19, 1895, provided for the cost of tunneling partly in earth and partly in rock, at the price of $2.00 per cubic yard over and above the unit price per lineal foot of tunnel in earth. This being so the provision in the contract of May 17, 1897, providing for an allowance of Six Dollars per cubic yard instead of Two Dollars per cubic yard, was unauthorized and the city cannot be bound by such payments, amounting to $6.00 per cubic yard. Therefore, the trial court erred in admitting evidence tending to establish the liability of the city for the payment of $6.00 per cubic yard instead of $2.00."

And again further on in the same opinion, at page 454, where it speaks of the question whether or not the contractors are entitled to compensation for removal of rock which breaks outside of the cross section lines as indicated by the engineer, the court says:

"That question was decided in favor of the city, by

the Appellate Court, which affirmed the ruling of the trial court; and such ruling not being assigned as cross error, by the contractors, was not passed upon in this court. The adverse decision of the Appellate Court on that subject, was apparently submitted to. The Circuit Court having thus decided that appellees were not entitled to compensation for such exterior breakage or excavation, and that decision not having been questioned in any reviewing court, it still stands and is binding upon appellees. Where there has been a final judicial decision of a question of law or fact directly in issue, by a competent court, and the same matter is again drawn in question between the same parties or their privies in a subsequent litigation, the former decision is conclusive. In the stipulation referred to it was claimed by the contractors that such exterior rock excavation was inevitable, and therefore it cannot be said that the question of the necessity of such exterior excavation in the all rock work makes the issue in this suit any different from the issue in the former suit.''

And then again, on page 457, the opinion proceeds:

''By the terms of this arrangement between Jackson and the contractors the latter were to be allowed $10.00 a cubic yard for back masonry in the third ring of brick in the mixed work. This arrangement was void, because the third ring of brick in the mixed work was necessarily a part of the tunnel proper, and the price therefor was included in the lineal foot price of the tunnel. The third ring of brick appears to have been placed in all of the earth and mixed parts of the tunnel, and so far as such third ring of brick in those portions of the tunnel is concerned, there was no alteration in the plans or specifications. The engineer had no power to bind the city to pay $10.00 per cubic foot for the third ring of brick, as back masonry. When the third ring of brick was put in and made a part of the tunnel, the city could not be made to pay for it an additional price to the price of each lineal foot of tunnel. When such third ring was placed in the lining of the tunnel, it became a part of the completed tunnel, to be paid for as such, according to the original contract price. The original agreement required the

contractors to fill in the space between the excavation and the lining with solid masonry without extra cost, and for doing what the contractors originally agreed to do for the lineal foot price of tunnel they were not entitled to receive the extra amount of $10.00 a yard.''

The main claims set forth in the bills of particulars filed by the plaintiffs are for back masonry, change of grade in the tunnel, extra timber and lumber and other matters fully covered, we think, by the extracts from the opinion above quoted.

The other large claim sued for is for the value of the plants taken possession of by the city when they declared the contract ended and assumed the work of finishing the tunnel. This claim according to the evidence amounted to about $76,000.

On the other hand it appears from the record that unauthorized payments were made for rock excavation at $6 per cubic yard, amounting with interest to $86,943.88, two-thirds of which amount was wholly unauthorized under the contract. On shafts, payments unauthorized by the contract were made to the contractors to the amount of about $43,806. Not only that, but in July 1898, something over $41,000 of the fifteen per cent. reserve provided by the contract, and amounting to more than half of that reserve, was paid over to the contractors, contrary to the terms of the contract. The record shows that allowances were made for uncompleted work as completed work, and that in this manner there was paid over to the contractors upwards of $24,000 for work which was never done. Unlawful payments for back masonry were made to the contractors by the city officials to the amount of over $100,000. The evidence tends to show that unauthorized and illegal payments to the amount of $308,000 were made to these contractors on this work; and that if interest was allowed upon the same from the time of the payments to the time of the trial below, the unlawful payments which the city would be

entitled to recover back from the contractors, would amount, with interest, to upwards of $425,000.

It is manifestly impossible to enter into any discussion or analysis of the great mass of evidence, in detail within any reasonable limits of an opinion. On many points the evidence is conflicting, but we do not think the erroneous instructions should cause a reversal of the judgment, for we are satisfied from the record that there should have been a judgment for a very substantial amount in favor of the City. Beard v. Maxwell, 113 Ill. 440; Heckle v. Grewe, 125 *id.* 58; Keeler v. Herr, 157 *id.* 57.

We do not think, for the reasons given above, in discussing instruction number five that the trial court erred in refusing to submit to the jury the question whether the supplemental contract, so-called, of May 17, 1897, was ratified by the city of Chicago, as requested in refused instructions 38 and 39. On the evidence we think that was a question of law for the court, there being no controversy as to the material facts, and the question having already been passed upon by the Supreme Court, as shown above.

The court did not err in excluding the letter written by plaintiffs to Carter H. Harrison, Mayor of Chicago, set forth in the declaration. It was a self-serving statement setting up plaintiffs' claims. It was not made admissible in evidence by being incorporated in the declaration. Nor did the court err in excluding the letter from Joseph Downey to McGann, Commissioner of Public Works. Downey was a private citizen, and we can conceive of no theory or rule of evidence which made the letter admissible in the case.

We do not think that the conduct of the juror Veatch, in testing the specimen of the material submitted to the jury for inspection and examination claimed by the plaintiffs to be conglomerate, constitutes ground for reversal.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*